ELECTRONICALLY FILED
Lincoln County Circuit Court
Cindy Glover, Circuit Clerk
2024-Nov-06 13:42:14
40CV-24-131
C11WD02 : 47 Pages

**IN THE CIRCUIT COURT OF LINCOLN COUNTY, ARKANSAS**
**CIVIL DIVISION**

| | |
|---|---|
| Chanta Ringo, individually and on behalf of all others similarly situated,<br><br>    **Plaintiff,**<br><br>v.<br><br>Baptist Health,<br><br>    **Defendant.** | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chanta Ringo ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Baptist Health ("Defendant"), and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. On or around April 22, 2024, Defendant, the largest non-profit healthcare system and the fifth-largest employer in Arkansas[1], lost control over its computer network and its employees' highly sensitive information in a data breach perpetrated by cybercriminals ("Data Breach"). According to the U.S. Department of Health & Human Services Office for Civil Rights, the Breach affected at least 5,207 individuals.[2]

2. According to Defendant's notice of the Data Breach ("Notice Letter"), on September 17, 2024, through its ongoing investigation, Defendant determined that a data security

---

[1] https://www.linkedin.com/company/baptist-health_394296/.

[2] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf; *see also*
https://www.beckershospitalreview.com/cybersecurity/hacker-breaches-baptist-health-hospital.html.

1


EXHIBIT
A

incident resulted in the unauthorized access to/acquisition of employee and dependent information. Defendant's investigation revealed that an unauthorized third party had unfettered access to Defendant's IT environment between April 22, 2024, and July 8, 2024—a shocking 78 days, which strongly implies that Defendant's logging, monitoring, and alerting systems were insufficient as compared to industry standards and were incapable of identifying malicious activity.[3]

3.      On information and belief, the information compromised in the Data Breach encompasses both personally identifiable information ("PII") and personal health information ("PHI") (collectively, "Private Information"), including but not limited to names, Social Security numbers, driver's license numbers, bank account information, and/or health insurance information.

4.      On or around September 30, 2024, Defendant finally notified victims of the Data Breach, stating:

> On September 17, 2024, through Baptist Health's ongoing investigation, we determine that a data security incident may have resulted in unauthorized access to / acquisition of employee and dependent information. Baptist Health became aware of the incident on July 8, 2024, when it was alerted to unusual activity in Drew County's Information Technology ("IT") environment. In response, we initiated an investigation, took steps to secure our systems, and notified law enforcement. Additionally, a third-party forensic firm was engaged to assist in the investigation.
>
> Our investigation determined that an unauthorized party accessed Drew County's IT environment between April 22, 2024 and July 8, 2024. While in our IT network, the unauthorized party may have accessed / acquired files that contain information pertaining to employees and dependents. This information may have included your name Social Security number, driver's license number, bank account information, and/or health insurance information.[4]

5.      Defendant's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its victims how many people were impacted, how the breach happened, or

---

[3] *See* Notice Letter, attached hereto as **Exhibit A**.
[4] *Id.*

why it took the Defendant approximately five months to identify the breach and more than two months to begin notifying its victims.

6.    Although Defendant downplays the incident with qualifiers like "may have," it is aware that cybercriminals intentionally targeted Defendant for the highly sensitive Private Information it stores on its computer network, attacked and bypassed the insufficiently secured network, and exfiltrated the highly sensitive Private Information, including the Social Security numbers of victims. As a result, the Private Information of Plaintiff and Class remains in the hands of those cyber-criminals.

7.    Indeed, if Defendant had implemented and maintained reasonable, industry standard alerting systems like endpoint detection and response ("EDR"), extended detection and response ("XDR"), data loss prevention ("DLP"), and Security Information and Event Management ("SIEM"), Defendant likely would have recognized the malicious activity on its information systems in time to stop the attack before the hackers could steal Plaintiff's and the proposed Class Members' highly sensitive Private Information.

8.    By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

9.    Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of Private Information misuse.

10.    The exposed Private Information of Plaintiff and Class Members can—and likely will—be sold on the dark web. Hackers can offer for sale the unencrypted, unredacted Private Information to criminals. Plaintiff and Class Members now face a lifetime risk of identity theft,

which is heightened here by the loss of Social Security numbers—the gold standard for identity thieves.

11.     Additionally, because of Defendant's delayed response, Plaintiff and Class Members had no idea their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

12.     Plaintiff brings this action on behalf of all Arkansas residents whose Private Information was compromised because of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

13.     Plaintiff and Class Members have suffered injury because of Defendant's conduct. These injuries include: (i) lost or diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (iv) the continued and substantially increased risk to their Private Information which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

14.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II.    PARTIES

15.    Plaintiff is a citizen and resident of Star City, Lincoln County, Arkansas.

16.    Defendant is non-profit corporation formed under the laws of Arkansas, with its principal place of business located at 9601 Baptist Health Drive, Little Rock, Arkansas 72205.

17.    All Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.    JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to Ark. Code Ann. § 16-4-101, as well as pursuant to the common law of the State of Arkansas.

19.    Both Jurisdiction and Venue are proper in this Court as Plaintiff is a resident and citizen of Lincoln County, Arkansas, and all proposed Class Members are residents of Arkansas.

## IV.    FACTUAL ALLEGATIONS

### *Defendant*

20.    Defendant is the largest not-for-profit healthcare system in Arkansas with eleven hospitals, including a rehabilitation institute, as well as a nursing and allied health school,

retirement community, physician management company and a multitude of therapy centers and clinics that add up to more than 180 points of access.[5] Defendant is the fifth-largest employer in Arkansas with more than 11,000 employees.[6]

21.    As a healthcare company and employer that handles highly sensitive and personal information, Defendant understood the need to protect its patients' and employees' Private Information and prioritize its data security.

22.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, and to make only authorized disclosures of this information.

23.    On information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect its employees' Private Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to the Private Information in its possession.

***Defendant's Data Breach***

24.    Plaintiff is employed by Defendant. As a condition of her employment, Plaintiff was required to provide Defendant with her Private Information and in return, reasonably expected that Defendant would safeguard her highly sensitive and confidential information. The Private Information entrusted to Defendant by Plaintiff and the Class included: full name, address, date of birth, email address, Social Security number, driver's license number, bank account information and health insurance information.

---

[5] https://www.linkedin.com/company/baptist-health_394296/.
[6] *Id.*

6

25.    On information and belief, after collecting its employees' Private information, Defendant maintains the unencrypted Private Information in its computer systems, which it failed to fit with sufficient tools to identify when it was being attacked by hackers.

26.    Defendant also stores PHI for its employees, including health insurance information.

27.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant implicitly agrees to safeguard the data using reasonable means according to federal law. In other words, Defendant knew or should have known that it was responsible to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

28.    Defendant failed in its duties beginning on or July 8, 2024, when its inadequate security practices resulted in the Data Breach. Defendant admits in its Notice Letter that the files accessed and acquired by the cybercriminals included Private Information.[7]

29.    In other words, Defendant's investigation revealed that its network had been hacked by cybercriminals and that Defendant's inadequate cyber and data security systems and measures allowed those responsible for the cyberattack to obtain and steal files containing a treasure trove of thousands of Defendant's employees' Private Information.

30.    In response to the Data Breach, Defendant contends that it "is committed to protecting the confidentiality and security of the information [it] maintain[s]."[8] It states that it is has certain measures and that "[t]o help prevent something like this from happening again, [it has] implemented, and will continue to adopt, additional safeguards and technical security measures to

---

[7] *See* Notice Letter.

[8] *Id.*

further protect and monitor [its] systems."[9] Such precautions and practices should have been in place before the Data Breach.

31.    Additionally, although Defendant claims it is "committed" to protecting the confidentiality and security of its employees' Private Information, it did not even figure out that cybercriminals had stolen the Private Information held on Defendant's systems for almost five months, giving the cybercriminals free reign to abuse and sell Plaintiff's and Class's Private Information as they saw fit.

32.    Despite its duties and alleged commitments to safeguard Private Information, Defendant did not follow industry standard practices in securing its employees' Private Information, as evidenced by the Data Breach.

33.    Cybercriminals need not harvest a person's Social Security number or financial account information to commit identity fraud or misuse Plaintiff's and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

34.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

        a.    Failing to maintain an adequate data security system to reduce the risk of data breaches;

        b.    Failing to adequately the Private Information it collects and maintains;

---

[9] *Id.*

c.    Failing to properly monitor its own data security systems for existing intrusions, including through the use of EDR, XDR, DLP, and SIEM tools;

d.    Failing to train its employees in the proper handling of emails containing the means by which the cyberattacks were able to first access Defendant's networks, and to maintain adequate email security practices;

e.    Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

f.    Failing to comply with Federal Trade Commission ("FTC") guidelines for cybersecurity, in violation of Section 5 of the Federal Trade Commission Act ("FTC Act");

g.    Failing to comply with HIPAA;

h.    Failing to adhere to industry standards for cybersecurity.

35.    As the result of antivirus and malware protection software in dire need of security updating, inadequate procedures for handling phishing emails or emails containing viruses or other malignant computer code, and other failures to maintain its networks in configuration that would protect against cyberattacks, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access Defendant's IT systems and remove data which contained unsecured and unencrypted Private Information.

36.    As a result of the Data Breach, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant.

37.     Through its Notice Letter, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach by offering victims identity protection support services to "help[] detect possible misuse of your information."[10]

38.     Through the Notice of Data Security Incident on Defendant's website, Defendant further recognized the actual imminent harm and injury that flowed from the Data Breach, so it urged breach victims to "review the statements they receive from their healthcare providers and health insurance plants. If they see any services that were not received, they should contact the provider or health plan immediately."[11]

39.     Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches.

40.     To date, Defendant has done nothing to provide Plaintiff and the Class Members with relief for the damages they have suffered because of the Data Breach. Defendant has merely offered Plaintiff and Class Members one year of complimentary identity protection support. But this does not compensate them for damages incurred and time spent dealing with the Data Breach. Signing up for this service requires Plaintiff and Class Members to forfeit time that could otherwise be spent making money or enjoying life.

41.     On information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

---

[10] *Id.*

[11] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.baptist-health.com/wp-content/uploads/2024/08/Baptist-Health%E2%80%94Substitute-Website-Notice%E2%80%948.30.24-1.pdf.

***The Data Breach Was a Foreseeable Risk of which Defendant Was on Notice.***

42.     Plaintiff and Class Members value their Private Information, as in today's electronic-centric world, their Private Information is required for numerous activities, such as new registrations to websites, or opening a new bank account, as well as signing up for special deals.

43.     The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Private Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[12] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[13] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[14]

44.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.

45.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information…[is] worth more than 10x on the black market."[15]

---

[12] Anita George, *Your Personal Data Is for Sale On the Dark Web. Here's How Much It Costs*, DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.
[13] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web.
[14] *For Sale in the Dark*, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark.
[15] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10X Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

46.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

47.    Individuals, like Plaintiff and Class members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and is likened to accessing your DNA for hacker's purposes.

48.    Data Breach victims suffer long-term consequences when their social security numbers are taken and used by hackers. Even if they know their social security numbers are being misused, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of Social Security number misuse.

49.    The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other Private Information, such as your name and address, remains the same."[16]

50.    Defendant's data security obligations were also particularly important given the substantial increase in Data Breaches in the healthcare industry preceding the date of the breach.

51.    According to Advent Health University, when an electronic health record "lands in the hands of nefarious persons the results can range from fraud to identity theft to extortion. In

---

[16] Social Security Admin., *Identity Theft and Your Social Security Number*, Pub. No. 05-10064 (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf.

fact, these records provide such valuable information that hackers can sell a single stolen medical record for up to $1,000."[17]

52.     Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

53.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase Private Information on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

54.     According to an article in the HIPAA Journal posted on October 14, 2022, cybercriminals hack into medical practices for their "highly prized" medical records. "[T]he number of data breaches reported by HIPAA-regulated entities continues to increase every year. 2021 saw 714 data breaches of 500 or more records reported to the [HHS' Office for Civil Rights] OCR – an 11% increase from the previous year. Almost three-quarters of those breaches were classified as hacking/IT incidents."[18]

55.     Healthcare organizations are easy targets because "even relatively small healthcare providers may store the records of hundreds of thousands of patients. The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health insurance information, and medical and clinical data, and that information can be easily monetized."[19]

---

[17] Advent Health Univ., *5 Important Elements to Establish Data Security in Healthcare* (May 21, 2020), https://www.ahu.edu/blog/data-security-in-healthcare.
[18] Steve Adler, *Editorial: Why Do Criminals Target Medical Records*, THE HIPAA JOURNAL (Nov. 2, 2023), https://www.hipaajournal.com/why-do-criminals-target-medical-records.
[19] *Id.*

56.     The HIPAA Journal article goes on to explain that health records, like those stolen from Defendant, are "often processed and packaged with other illegally obtained data to create full record sets (the previously mentioned Fullz package) that contain extensive information on individuals, often in intimate detail." The record sets are then sold on dark web sites to other criminals and "allows an identity kit to be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."[20]

57.     Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully can ward off a potential attack.

58.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[21]

59.     These significant increases in attacks to companies, particularly those in the healthcare industry, and attendant risk of future attacks, is widely known to the public and to anyone in that industry, including Defendant.

60.     A study by Experian found that the average total cost of medical identity theft is "nearly $13,500" per incident, and that many victims were forced to pay out-of-pocket costs for fraudulent medical care.[22] Victims of healthcare data breaches often find themselves "being denied

---

[20] *Id.*

[21] Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack.

[22] Brian O'Connor, *Health Care Data Breach: What to Know About Them and What to Do After One*, EXPERIAN (Mar. 31, 2023), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one.

care, coverage or reimbursement by their medical insurers, having their policies canceled or having

to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores."[23]

61.     Moreover, there may be a time lag between when harm occurs versus when it is

discovered, and also between when Private Information is stolen and when it is used. According

to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data

breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for
> up to a year or more before being used to commit identity theft. Further, once stolen
> data have been sold or posted on the Web, fraudulent use of that information may
> continue for years. As a result, studies that attempt to measure the harm resulting
> from data breaches cannot necessarily rule out all future harm.

62.     It is incorrect to assume that reimbursing a victim for a financial loss due to fraud

makes that individual whole again. Like the GAO's study, the Department of Justice's Bureau of

Justice Statistics ("BJS") found that "among victims who had personal information used for

fraudulent purposes, about a third (32%) spent a month or more resolving problems."[24] In fact, the

BJS reported, "resolving the problems caused by identity theft [could] take more than a year for

some victims."[25]

63.     As the fraudulent activity resulting from the Data Breach may not come to light for

years, Plaintiff and Class Members now face years of constant surveillance of their financial and

personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur

such damages in addition to any fraudulent use of their Private Information.

---

[23] *Id.*

[24] Erika Harrell, *Victims of Identity Theft, 2014*, U.S. DEP'T OF JUSTICE (Sept. 2015), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (revised Nov. 13, 2017).

[25] *Id.*

***Defendant Failed to Comply with FTC Guidelines.***

64.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

65.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[26]

66.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

67.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

68.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect private data, treating the failure to employ reasonable and

---

[26] Federal Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions clarify the measures businesses take to meet their data security obligations.

69.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

***Defendant Failed to Comply with Industry Standards.***

70.    As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

71.    To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those

17

with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with at least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[27]

72.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks....

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the Internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net) ....

---

[27] *Id.* at 3-4.

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it....

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic....[28]

73.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure Internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information

---

[28] Cybersecurity and Infrastructure Security Agency, *Protecting Against Ransomware* (April 11, 2019), https://www.cisa.gov/news-events/news/protecting-against-ransomware (revising Sept. 2, 2021).

technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[29]

74.     Given that Defendant was storing the Private Information of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

75.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

---

[29] Microsoft Threat Intelligence, *Human-Operated Ransomware Attacks: A Preventable Disaster*, (Mar.     5,     2020),     https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster.

76.     The foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

**Defendant Failed to Comply with HIPAA.**

77.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep PHI safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of PHI.[30]

78.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information is properly maintained.[31]

79.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

    a.     Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains, and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b.     Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. §

---

[30] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[31] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

164.306(a)(2);

c.    Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.    Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.    Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.    Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.    Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard

PHI, in compliance with 45 C.F.R. § 164.530(c).

80.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrated Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Plaintiff's Experience***

81.     Plaintiff is an employee of Defendant and entrusted her Private Information to Defendant as a condition of her employment.

82.     At the time of the Data Breach, Defendant retained Plaintiff's address, date of birth, email address, Social Security number, driver's license number, bank account information, and health insurance information.

83.     Plaintiff received Defendant's Notice Letter on or around September 30, 2024. The Notice stated that Plaintiff's Private Information was among the information accessed or acquired during the Data Breach.[32]

84.     Because of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice Letter and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. Plaintiff spent time monitoring her financial and medical accounts. This time has been lost forever and cannot be recaptured.

85.     Plaintiff is very careful about sharing her sensitive Private Information. She has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

---

[32] *See* Notice Letter.

86.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach.

87.     Indeed, following the Data Breach, Plaintiff has experienced a dramatic increase in spam calls, emails, and text messages, suggesting that her PII has been stolen and is now in the hands of cybercriminals.

88.     Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here because of the Data Breach, cybercriminals can use the stolen and compromised to gather and steal even more information.[33]

89.     Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

90.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

91.     Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

92.     Because of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

---

[33] Ryan Toohil, *What Do Hackers Do with Stolen Information?*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

## V.    CLASS ALLEGATIONS

93.     Plaintiff brings this class action on behalf of herself and on behalf of others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Arkansas Rules of Civil Procedure.

94.     The Class that Plaintiff seeks to represent is defined as follows:

> All Arkansas residents whose Personal Information was compromised in the Data Breach, including all those individuals who received notice of the breach.

95.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

96.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

97.     <u>Numerosity</u>, Ark. R. Civ. P. 23(a)(1): The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of individuals whose Private Information may have been improperly accessed in the Data Breach.

98.     <u>Commonality</u>, Ark. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

> a.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

25

b.  Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c.  Whether Defendant had duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d.  Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e.  Whether and when Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

k.  Whether Defendant violated the consumer protection statutes invoked herein;

l.  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

m.  Whether Defendant knowingly made false representations as to it data security practices;

n.  Whether Plaintiff and Class Members are entitled to restitution because of Defendant's wrongful conduct; and

o.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced because of the Data Breach.

99.  <u>Typicality</u>, Ark. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised because of the Data Breach, due to Defendant's misfeasance.

100. <u>Policies Generally Applicable to the Class</u>, this class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

101. <u>Adequacy</u>, Ark. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

102. <u>Superiority and Manageability</u>, Ark. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit many Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further,

even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

103.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

104.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

105.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

106.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

107.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief regarding the Class Members is appropriate under Rule 23(b)(2) of the Arkansas Rules of Civil Procedure.

108.    Likewise, issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

a.  Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.  Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c.  Whether Defendant failed to comply with applicable laws, regulations, and industry standards relating to data security;

d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.  Whether Defendant breached the implied contract;

f.  Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

h.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief because of Defendant's wrongful conduct.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

**(On Behalf of Plaintiff and the Class)**

109.    Plaintiff and the Class repeat and re-allege paragraphs 1 through 108 above as if fully set forth herein.

110.    Plaintiff and the Class entrusted Defendant and/or its subsidiaries with their Private Information.

111.    Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

112.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

113.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

114.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

115.    Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and its employees, which is recognized by laws and regulations including but not limited to HIPAA due to Defendant's collection of PHI, as

well as common law. Defendant was in the best and only position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

116.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). The healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

117.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain pursuant to regulations.

118.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

119.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

120.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant's inadequate security practices.

121.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

31

122.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

123.    Plaintiff and the Class had and have no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

124.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class because of the Data Breach.

125.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

126.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

127.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

128.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

129.     Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

130.     Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

131.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

132.     Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information it was no longer required to retain pursuant to regulations.

133.     Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

134.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

135.     There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

136.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

137.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

138.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

139.    The harm that occurred because of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

140.    Defendant also violated its duty under HIPAA by failing to use reasonable measures to protect PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

141. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se.*

142. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

143. As a direct and proximate result of Defendant' negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

144.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

145.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT II
### Breach of Implied Contract
### (On behalf of Plaintiff and the Class)

146.    Plaintiff and the Class repeat and re-allege paragraphs 1 through 108 above as if fully set forth herein.

147.    As a condition of employment, Plaintiff and the Class were required to entrust their Private Information to Defendant. In so doing, Plaintiff and the Class entered implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

148.    Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law, including HIPAA, and its internal policies.

149.    Plaintiff and the Class members accepted Defendant's offers by disclosing their Private Information to Defendant in exchange for services.

150.    In turn, and through internal policies, Defendant agreed to protect and not disclose Private Information to unauthorized persons.

36

151.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

152.    After all, Plaintiff and Class members would not have entrusted their PII/PHI to Defendant in the absence of such an agreement with Defendant.

153.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

154.    Defendant breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that Private Information was compromised because of the Data Breach.

155.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

156.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT III
### Breach of Fiduciary Duty
### (On behalf of Plaintiff and the Class)

157.    Plaintiff and the Class repeat and re-allege paragraphs 1 through 108 above as if fully set forth herein.

158.    In providing their Private Information to Defendant, Plaintiff and Class Members justifiably placed a special confidence in Defendant to act in good faith and with due regard for the interests of Plaintiff and Class Members to safeguard and keep confidential that Private Information.

159.    Defendant accepted the special confidence Plaintiff and Class Members placed in it, as evidenced by its acknowledgement that it had a legal duty to protect Plaintiff's and Class Members' Private Information.

160.    In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became a guardian of Plaintiff's and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its customers, including Plaintiff and Class Members for the safeguarding of Plaintiff's and Class Members' Private Information.

161.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its employment relationships, in particular, to keep secure the Private Information of its employees.

162.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to protect the integrity of the systems containing Plaintiff's and Class Members' Private Information.

163.    Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

164.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of the services they paid for and received.

165.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

### COUNT IV
### Unjust Enrichment
### (On behalf of Plaintiff and the Class)

166.    Plaintiff and the Class repeat and re-allege paragraphs 1 through 108 above as if fully set forth herein.

167.    This cause of action is brought in the alternative to Plaintiff's breach of implied contract claim.

168.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable Private Information.

169.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

170.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

171.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

172.    Defendant acquired the monetary benefit and Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

173.    If Plaintiff and Class Members knew that Defendant had not secured its Private Information, they would not have agreed to provide their Private Information to Defendant.

174.    Plaintiff and Class Members have no adequate remedy at law.

175.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft;

40

(ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

176. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

177. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds they unjustly received from them.

## COUNT V
### Invasion of Privacy
### (On Behalf of Plaintiff and Class)

178. Plaintiff and the Class repeat and re-allege paragraphs 1 through 108 above as if fully set forth herein.

179. Plaintiff and the Class had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

41

180.    Defendant owed a duty to its current and former employees, including Plaintiff and the Class, to keep their Private Information contained as a part thereof, confidential.

181.    Defendant failed to protect and released to unknown and unauthorized third parties the Private Information of Plaintiff and the Class.

182.    Defendant allowed unauthorized and unknown third parties to access and examine the Private Information of Plaintiff and the Class, by way of Defendant's failure to protect the Private Information.

183.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and the Class is highly offensive to a reasonable person, especially because of the highly sensitive nature of the data affected.

184.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and the Class disclosed their Private Information to Defendant as part of Plaintiff's and the Class's relationships with Defendant, but privately with an intention that the Private Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

185.    Because of the intrusion, Plaintiff's and Class Members' data was disclosed to notorious cybercriminals and other identity thieves whose mission it is to misuse Private Information.

186.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person and it further represents a disclosure of private facts to the public.

187.    Defendant acted with a knowing and intentional state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

188.    Moreover, due to the highly foreseeable nature of data breaches and the harm inherent therefrom, Defendant's failure to implement reasonable security measures was done with substantial certainty of the harm that that would and did follow.

189.    Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class

190.    As a proximate result of the above acts and omissions of Defendant, the Private Information of Plaintiff and the Class was disclosed to third parties without authorization, causing Plaintiff and the Class to suffer damages.

191.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class in that the Private Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff or Class Members.

## VII.    **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of herself and Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class and appointing Plaintiff and her Counsel to represent each such Class;

43

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

    v.    prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

    vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct

testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

ix.  requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.  requiring Defendant to conduct regular database scanning and securing checks;

xi.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the Private Information of Plaintiff and Class Members;

xii.  requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees

45

compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Date: November 5, 2024.

Respectfully Submitted,

*/s/Christopher D. Jennings*
Christopher D. Jennings (2006306)
**JENNINGS PLLC**
500 President Clinton Avenue
Suite 110
Little Rock, AR 72201
Tel: 501-255-8965
chris@jenningspllc.com

Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW, P.A.**
One West Las Olas Boulevard, Suite 500
Ft. Lauderdale, FL 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

Gary M. Klinger (*pro hac vice*
forthcoming)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

*Attorneys for Plaintiff and the Proposed
Class*

# Exhibit A



**Baptist Health**

Sutton Processing Center
P.O. Box 1829
Loganville, GA 30052

Chanta Ringo

September 30, 2024

Dear Chanta Ringo:

Baptist Health is committed to protecting the confidentiality and security of the information we maintain. We are writing to inform you about an incident that occurred at Baptist Health Medical Center-Drew County, formerly known as Drew Memorial Hospital ("Drew County"). This notice explains the incident, measures we have taken, and some steps you can take in response.

On September 17, 2024, through Baptist Health's ongoing investigation, we determined that a data security incident may have resulted in unauthorized access to / acquisition of employee and dependent information. Baptist Health became aware of the incident on July 8, 2024, when it was alerted to unusual activity in Drew County's Information Technology ("IT") environment. In response, we initiated an investigation, took steps to secure our systems, and notified law enforcement. Additionally, a third-party forensic firm was engaged to assist in the investigation.

Our investigation determined that an unauthorized party accessed Drew County's IT environment between April 22, 2024 and July 8, 2024. While in our IT network, the unauthorized party may have accessed / acquired files that contain information pertaining to employees and dependents. This information may have included your name, Social Security number, driver's license number, bank account information, and/or health insurance information.

Out of an abundance of caution, we are offering you a complimentary one-year membership to Experian®' IdentityWorks℠. This product helps detect possible misuse of your information and provides you with identity protection support focused on immediate identification and resolution of identity theft. IdentityWorks is free and enrolling in the program will not affect your credit score. For more information on IdentityWorks, including instructions on how to activate your complimentary one-year membership and steps you can take to protect your information, please ___ ___ ___ ___ ___ ___ letter.

We ___ ___ ___ ___ ___ ___ ___ ___ incident may occur and take this matter seriously. To help prevent something ___ ___ ___ ___ ___ ___ ___ ___ implemented, and will continue to adopt, additional safeguards and technical ___ ___ ___ ___ ___ ___ ___ 8:00 a.m. – 8:00 p.m., Central Time, except for major U.S. holidays.